IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No.  13-cv-02546-PAB-MJW

ROBIN L. WILLIAMS, Personal Representative of the Estate of Michael R. Williams,
Deceased,

      Plaintiff,

v.

FRED D. McKEE,
DEBBIE GRIFFITH, and
DELTA COUNTY, COLORADO,

      Defendants.

---

# ORDER

---

This matter is before the Court on Defendants' Motion to Dismiss [Docket No. 20] filed by defendants Fred D. McKee, Debbie Griffith, and Delta County, Colorado and on Plaintiff's Motion for Leave to File Second Amended Complaint [Docket No. 31] filed by plaintiff Robin L. Williams, as personal representative of the estate of Michael R. Williams.  This matter arises out of Mr. Williams' termination from his positions as a Detention Officer in the Delta County Sheriff's Department and an Appraiser at the Delta County Assessor's Office.  The Court has jurisdiction based on 28 U.S.C. § 1331.

## I.  BACKGROUND

The amended complaint[1] sets forth the following factual allegations.  Defendant

---

[1]Since plaintiff's motion to file a second amended complaint is still pending, and since the factual allegations in the first and second amended complaints do not differ, the Court will refer to the first amended complaint for the purposes of this motion.

Fred D. McKee has been the Delta County Sheriff at all times relevant to this case.

Docket No. 19 at 1, ¶ 2.  Defendant Debbie Griffith has been the Delta County

Assessor at all relevant times.  *Id.* at 1, ¶ 3.

In 2010, Mr. Williams was hired into a full-time position as a Detention Officer in

the Delta County Sheriff's Department.  *Id.* at 2, ¶ 8.  On January 8, 2011, he received

a written evaluation stating that he "meets expectations" as to work habits, customer

service, team work/relations, job competency/proficiency, use of supervision, and

evaluation of performance; that he exceeded expectations in establishing positive

relationship; and that he did not meet expectations in problem solving because his

computer skills were lacking.  *Id.* at 2, ¶ 9.  This is the only written evaluation he

received on the job; he did not receive any complaints about his performance.  *Id.* at 2,

¶¶ 9-10.

Mr. Williams had a bumper sticker on his privately-owned pickup truck that said:

"Still Voting Democrat?  You're Stuck on Stupid."  *Id.* at 3, ¶¶ 12-13.  Mr. Williams did

not use his truck for work and it was not visibly identified as a county vehicle.  *Id.* at 4, ¶

23.  Mr. Williams parked his pickup truck in front of the Work Release Facility of the

Delta County Jail, where he worked.  *Id.* at 3, ¶ 11.

At the end of June 2011, Mr. Williams' immediate supervisor, Karl Martin, told

Mr. Williams that defendant McKee had received a complaint about the bumper sticker.

*Id.*  Specifically, Mr. McKee had been contacted by a concerned citizen complaining

that he found the bumper sticker disconcerting.  *Id.* at 5, ¶ 29.  When asked how the

citizen knew the truck belonged to a county employee, the citizen said he knew

2

because the truck was parked in front of the building where the employees park. *Id*.

The citizen asked Mr. McKee if he shared Mr. Williams' political views. *Id*. at 6, ¶ 30. A

few days later, Mr. McKee called Mr. Williams and told him that a Delta County resident

was offended by the bumper sticker and asked if Mr. Williams could park his truck

around the side or back of the building. *Id*. at 3, ¶ 14.

During the month of August, Mr. Williams drove his pickup truck to work and

parked it in front of the building, but with blue tape covering the bumper sticker. *Id*. at 3,

¶ 17. During the second week of the month, Mr. Williams forgot to put tape over the

bumper sticker. *Id*. at 3, ¶ 18. The same concerned citizen called Mr. McKee to report

that the truck with the bumper sticker was in front of the building again. *Id*. at 5, ¶ 29;

*see also* Docket No. 20-3 at 1. Mr. McKee called Mr. Williams and said, "I need you to

help me out here and get it covered." Docket No. 19 at 3, ¶ 18. Mr. Williams did so.

*Id*. A week or two later, Mr. Williams arrived at work with the bumper sticker uncovered.

*Id*. at 3-4, ¶ 19. Mr. McKee told him to "be sure to get that tape on there before you

leave the house." *Id*.

On August 29, 2011, Mr. Williams asked Mr. McKee why he could not park his

private vehicle on a city street. *Id*. at 4, ¶ 20. Mr. McKee raised his voice and said:

"That city street improvement is county property and that is my building, end of

discussion." *Id*. This encounter caused Mr. Williams significant stress. *Id*. at 4, ¶ 21.

He wrote Mr. McKee a letter requesting a leave of absence. *Id*. Mr. McKee found Mr.

Williams' letter offensive and spoke to another Sheriff's Office employee, who agreed.

*Id*. at 5-6, ¶ 29.  The Undersheriff, M.L. Taylor, advised Mr. McKee that Mr. Williams

should be terminated immediately based on the tone of the letter.  *Id*.

After August 29, 2011, Mr. Williams parked his truck, with the bumper sticker

uncovered, on the street near the Work Release Facility.  *Id*. at 4, ¶ 24.

On September 20, 2011, Mr. McKee wrote Mr. Williams a letter, stating:

> In your letter the manner in which you reply to these issues indicates that you
> have no intention to comply with [the request to park the truck on the west
> side or behind the building].  I find that this level of insubordination to be [sic]
> intolerable and effective immediately, your employment with the Delta
> County Sheriff's Department Sheriff's office [sic] is terminated.

*Id*. at 4-5, ¶ 26.  The Delta County Sheriff's Office has no stated policy on political

bumper stickers.  *Id*. at 5, ¶ 28.

Mr. Williams filed for state unemployment benefits; the Industry Claim Appeals

Panel found that his behavior was not rude or offensive within the meaning of Colo.

Rev. Stat. §§ 8-73-108(4), (5)(e)(XIV) and awarded him benefits.  *Id*. at 6, ¶ 31.

Another Delta County Detention Officer has parked and continues to park a car with a

"No Obama" bumper sticker on the same street and no action has been taken against

him.  *Id*. at 6, ¶ 33.

In April 2013, Mr. Williams was hired as an entry-level Appraiser by the Delta

County Assessor's Office.  *Id*. at 7, ¶ 35.  Mr. Williams learned the technological

applications at a fair pace, requiring decreasing supervision over time, and followed

instructions on prioritizing assignments.  *Id*. at 7, ¶¶ 37-41.

In June or July 2013, Mr. Williams had a phone conversation at work about the

possibility of filing a lawsuit against Mr. McKee.  *Id*. at 8, ¶ 43.  One of his co-workers

heard the conversation and asked Mr. Williams if he was suing Mr. McKee, to which Mr.

Williams responded that he did not know.  *Id*. at 8, ¶ 43.

On September 18, 2013, Mr. Williams filed this case, alleging that Mr. McKee

violated his rights under the First and Fourteenth Amendments by terminating his

employment and that Delta County violated the same constitutional rights by failing to

sufficiently train Mr. McKee.  Docket No. 1.

On September 25, 2013, the same co-worker overheard Mr. Williams discussing

the lawsuit with his attorney.  Docket No. 19 at 8, ¶ 44.  She asked if Mr. Williams was

suing Mr. McKee, and he stated that he was.  *Id*.  The co-worker communicated this

information to defendant Griffith that day.  *Id*. at 8, ¶ 45.  Two hours later, Ms. Griffith

terminated Mr. Williams' employment.  *Id*.

Mr. Williams died on November 16, 2013, Docket No. 16 at 1, ¶ 2, and his wife,

on behalf of his estate, was substituted as plaintiff.  Docket No. 19.  On December 13,

2013, plaintiff filed an amended complaint, alleging, in addition to the original

allegations, that (1) Ms. Griffith violated Mr. Williams' right to due process by failing to

follow the Delta County Personnel Policies; (2) Delta County ratified his terminations;

and (3) Ms. Griffith discharged Mr. Williams in retaliation for filing a lawsuit in violation

of Colorado law.  Docket No. 19 at 8-12.  Plaintiff seeks a declaratory judgment that

defendants violated Mr. Williams' first amendment rights, as well as damages in excess

of $75,000, attorney's fees, and costs.  *Id*.

On December 27, 2013, defendants filed a motion to dismiss the amended

complaint.  Docket No. 20.  On February 11, 2014, plaintiff filed a motion for leave to

file a second amended complaint.  Docket No. 31.  Magistrate Judge Gordon P.

5

Gallagher recommends that the Court grant plaintiff's motion for leave to amend.

Docket No. 38.  Defendants object to the magistrate judge's recommendation.  Docket

No. 39.

## II.  STANDARD OF REVIEW

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon

which relief can be granted is not to weigh potential evidence that the parties might

present at trial, but to assess whether the plaintiff's complaint alone is sufficient to

plausibly state a claim.  Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations omitted).  In doing so, the Court "must accept all

the well-pleaded allegations of the complaint as true and must construe them in the

light most favorable to the plaintiff."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215

(10th Cir. 2007) (quotation marks and citation omitted).

The "plausibility" standard requires that relief must plausibly follow from the facts

alleged, not that the facts themselves be plausible.  *Bryson v. Gonzales*, 534 F.3d

1282, 1286 (10th Cir. 2008).  However, "where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has

alleged–but it has not shown–that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).

## III.  ANALYSIS

### A.  First Amendment

The Tenth Circuit applies a four-part test to determine whether the First

Amendment rights of a public employee have been violated.  First, the plaintiff must

show that (1) he was not speaking pursuant to his official duties; (2) the speech was on a matter of public concern; (3) the employer's interest in fostering efficiency in the workplace did not outweigh the employee's First Amendment interest; and (4) the protected conduct motivated the adverse employment action. *Morris v. City of Colorado Springs*, 666 F.3d 654, 661 (10th Cir. 2012); (citing *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)). The plaintiff need not show that the protected conduct was the sole or "but for" cause of the employer's adverse action, but only that it played a substantial part in the employer's decision. *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005). The first three elements are questions of law to be resolved by the court. *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1202 (10th Cir. 1998). If the plaintiff succeeds in establishing the first four elements, the burden shifts to the defendant to show that it would have made the same decision absent the protected conduct. *Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1244-45 (10th Cir. 2009).

The parties agree that the bumper sticker was unrelated to Mr. Williams' official duties and that it touched on a matter of public concern. Docket No. 20 at 11. Defendants contend that the request that Mr. Williams move his vehicle from the front of the building served three governmental interests: (1) assuring prospective applicants that a display of political affiliation is not necessary to obtain or retain employment; (2) promoting efficiency and harmony among law enforcement personnel; and (3) assuring the public that police protection will be available to them, free of political considerations. Docket No. 20 at 12. Plaintiff contends that there "is no evidence the bumper sticker had any effect on the efficiency of running the sheriff's office" and that it

7

is "the type of speech which is not likely to have any effect on the sheriff's office."
Docket No. 30 at 7-8.

Courts have upheld governmental regulations prohibiting law enforcement
personnel from displaying political signs on their lawns or affixing bumper stickers to
their vehicles.  *See Horstkoetter v. Dep't of Public Safety*, 159 F.3d 1265, 1273 (10th
Cir. 1998); *Wicker v. Goodwin*, 813 F. Supp. 676, 681 (E.D. Ark. 1992); *Connealy v.
Walsh*, 412 F. Supp. 146, 155 (D. Mo. 1976).

In *Horstkoetter*, the court considered a department policy prohibiting Oklahoma
Highway Patrol members from displaying partisan political signs at their homes.  159
F.3d at 1269.  The court recognized that, "[f]or over a century, courts have upheld
regulations . . . curtailing the rights of public employees to engage in certain kinds of
political speech" and that such regulations can apply to employees of state and local
governments.  *Id*. at 1271-72 (listing cases).  The court found that the regulation at
issue served at least three important governmental interests, namely, the three interests
defendants cite in this case.  *Id*. at 1273-74; *see* Docket No. 20 at 12.  The court found
it "critical" that law enforcement personnel do not seem to be "practicing political justice"
and that they appear "above reproach."  *Id*. at 1274 (quoting *U.S. Civil Service Comm'n
v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 565 (1973) and *Reeder v. Kan.
City Bd. of Police Comm'rs*, 733 F.2d 543, 547 (8th Cir. 1984)).  The court concluded
that the "government's well-established right to restrict the political speech of its
employees extends far enough to allow state and local law enforcement organizations
to prohibit members from displaying political signs at their residences."  *Id*.

8

Likewise, in *Connealy*, the court upheld the plaintiff's termination pursuant to a provision of the personnel policies of a Missouri juvenile court prohibiting employees from "involvement in partisan political activities."  412 F. Supp. at 148.  The plaintiff lost her position as a social worker for youth on probation because she did not remove a McGovern bumper sticker from her car.  *Id*.  The court found that the plaintiff's termination served important government interests because (1) "a partisan political bumper sticker could have an adverse impact on the efficiency of the social worker" and (2) the "display of a partisan political bumper sticker on an automobile used for official business of the Juvenile Court Services and parked in the parking lot of the Juvenile Court could create a public impression of, and evidence of the fact of, politically partisan activities by the judges of the Sixteenth Judicial Circuit Court, and of other officers thereof."  *Id*. at 151-54.  The court further found that these interests outweighed the plaintiff's interest in speech.  *Id*. at 156.  The court stressed that, because the plaintiff "dealt primarily with juvenile drug offenders, their families and their friends, . . . . any partisan political bumper sticker, in these or other possible circumstances, could inject an avoidable adverse factor into the relationship between plaintiff, her clients, and other employees in the Juvenile Court Services which could make the work of plaintiff, other officers and judges of the circuit court much more difficult if not impossible."  *Id*.

Plaintiff cites *Goodman v. City of Kansas City, MO*, 906 F. Supp. 537 (W.D. Mo. 1995), for the proposition that a government employer may not prevent an employee from displaying his partisan political views if the "employee's duties do not depend on the establishment of relationships of trust and confidence."  Docket No. 30 at 4.

9

*Goodman* does not set forth such a rule.  Rather, the court's decision in that case to strike down administrative regulations barring all city employees from displaying partisan bumper stickers, buttons, or yard signs turned on the court's finding that the City "fail[ed] to demonstrate that the regulations challenged address 'real and not merely conjectural' harms."  *See id*. at 544.  This finding followed from the principle that, "in order to justify restrictions on employee speech, the government must demonstrate that the threatened harms from employee speech are real and that the regulations will, in fact, alleviate these harms."  *Id*. at 543 (citing *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 468 (1995)).  The court noted that the "government's burden is greater with respect to a broad based restriction on expression than with respect to an isolated disciplinary action."  *Id*. at 541-42.

In this case, plaintiff is challenging "isolated disciplinary action" and not a "broad based restriction on expression."  *See id*.; *see also* Docket No. 19 at 5, ¶ 28.  Moreover, defendant McKee claims that the bumper sticker caused harm to defendants' cited interests, insofar as a citizen was offended by the bumper sticker and expressed concern that it reflected the Sheriff's own political viewpoints.  Docket No. 19 at 3, 5-6, ¶¶ 11, 29, 30.  Accordingly, the concerns motivating the decision in *Goodman*–namely, that the challenged regulations would act as a "wholesale deterrent to a broad category of expression by a massive number of potential speakers," *Goodman*, 906 F. Supp. at 541 (citation omitted), absent sufficient evidence that the regulations were necessary to avoid harm–are not at issue here.

Plaintiff cites *Fire Fighters Ass'n v. Barry*, 742 F. Supp. 1182, 1191 (D.D.C. 1990), which held that a fire department failed to show that employees' bumper stickers criticizing the department undermined the department's interest in maintaining discipline. The Chief testified that "unidentified firefighters 'grumbled' about the message conveyed by the bumper sticker" and the court found this evidence insufficient "to show concrete harm to the defendants' interests" because "[e]mployee complaints are a regular phenomena in any workplace." *Id.*

In this case, the Sheriff was not dealing with a theoretical concern about Mr. Williams' bumper sticker. A member of the public was offended by the bumper sticker and, based upon Mr. Williams parking his vehicle in front of the building, the citizen was concerned that it reflected the views of the Sheriff. *See* Docket No. 19 at 5, ¶ 29. Mr. McKee's request that plaintiff park in a different location and his subsequent termination of plaintiff in light of plaintiff's non-compliant behavior served the government's interest in maintaining an appearance of political neutrality by the Sheriff's Department and in fostering harmony and efficiency within the Sheriff's Office, *Horstkoetter*, 159 F.3d at 1274, interests that have been found particularly important in the context of executive branch activities. *See U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 565 (1973) ("it is also critical that [executive branch employees] appear to the public to be avoiding [practicing political justice], if confidence in the system of representative Government is not to be eroded to a disastrous extent."). Mr. McKee's actions also furthered the interests of the Sheriff's Department in avoiding an appearance that future employees need to make a public display of their political

11

affiliations.  *Horstkoetter*, 159 F.3d at 1273-74.  The Court finds that the complaint fails

to establish that defendants' interest did not outweigh Mr. Williams' interest in speech.

*See Morris*, 666 F.3d at 661.

Accordingly, plaintiff's First Amendment claim fails as a matter of law.

**B.  Fourteenth Amendment**

Under the due process clause of the Fourteenth Amendment, a state may not

deprive an individual of liberty or property without due process of law.  U.S. Const. Am.

XIV, § 1.  An individual has a protected property interest in a particular benefit if he or

she has a "legitimate claim of entitlement to it" grounded in an "independent source

such as state law."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577

(1972).  State laws may take the form of "state statutes, local ordinances, established

rules, or mutually explicit understandings."  *Farthing v. City of Shawnee, Kansas*, 39

F.3d 1131, 1135 (10th Cir. 1994) (citation omitted).  The Court therefore looks to

Colorado law to determine whether Mr. Williams had a protected property interest in his

employment at the Sheriff's Office.

In Colorado, "an employee is presumed to be employed at-will and can be

terminated without cause or notice" without giving rise to a cause of action unless the

employee has "tenure, a contract for a fixed term, an implied promise of continued

employment, or if state law allows for his dismissal only for cause or its equivalent."

*Rooker v. Ouray County*, 841 F. Supp. 2d 1212, 1217 (D. Colo. 2012) (citing *Darr v.

Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007)).  A sheriff "may appoint

as many deputies as the sheriff may think proper and may revoke such appointments at

12

will." Colo. Rev. Stat. § 30-10-506.  "Before revoking an appointment of a deputy, the sheriff shall notify the deputy of the reason for the proposed revocation and shall give the deputy an opportunity to be heard by the sheriff."  *Id.*

Plaintiff cites the Delta County Personnel Policies[2] for the proposition that Mr. McKee violated Mr. Williams' due process rights by denying him "notice of right to appeal," "an opportunity to challenge his termination by responding in writing at a hearing," an "opportunity to present evidence," and an opportunity to "seek a hearing." Docket No. 19 at 9-10, ¶¶ 53-56.

In *Rooker*, a paramedic employed by Ouray County alleged that he had a property interest in continued employment because the personnel manual provided that he could not be terminated in a disciplinary action without a prior opportunity to be heard.  841 F. Supp. 2d at 1217-18.  The court held that the personnel manual did not accord the plaintiff a property interest in continued employment because it did not "promise him continued employment, employment for a fixed term, or that he can be terminated only for cause," but only "outline[d] termination procedures."  *Id.* at 1217-18.

Likewise, the court in *McLallen v. Taylor*, No. 10-cv-01187-RPM, 2012 WL 502697, at *4 (D. Colo. Feb. 15, 2012), found that § 30-10-506 "contains no substantive restriction on the sheriff's discretion in revoking the appointment of a deputy and does

---

[2]Plaintiff alleges as follows: "Under §§ 9.4 and 9.6 of the Delta County Personnel Policies, an employee is required to be given 10 working days' notice prior to the effective date of his termination unless the Department Head or Elected official agrees to permit a shorter period of notice due to extenuating circumstances. . . . [U]nder §8.3 of the Delta County Personnel Policies, so long as the County will not be placed at risk, an employee facing possible discipline is to be provided reasonable written notice of such discipline (usually three (3) working days.)."  Docket No. 19 at 9-10, ¶¶ 54-55.

not prescribe any particular procedure for the 'opportunity to be heard by the sheriff.'" The court found that providing a deputy with a "face to face meeting to explain his conduct" was sufficient to meet the requirement of notice and an opportunity to be heard under the statute. *Id*.

The Court finds the reasoning of *Rooker* and *McLallen* persuasive.  Plaintiff does not allege that Mr. Williams was denied a "face to face meeting" with Mr. McKee to "explain his conduct."  Rather, plaintiff alleges that Mr. McKee violated Mr. Williams' right to procedural due process by failing to abide by the policies in the personnel manual that provide for a specific amount and type of notice and a mechanism for appealing termination decisions.  The personnel manual, however, did not grant Mr. Williams a "legitimate claim of entitlement" in continued employment and thus the allegations that Mr. McKee did not abide by its policies do not state a claim for relief under the Due Process Clause.  *See Roth*, 408 U.S. at 577;  *Rooker*, 841 F. Supp. 2d at 1217-18; *McLallen*, 2012 WL 502697, at *4.

## IV.  CONCLUSION

Since plaintiff's allegations, taken as true, do not state a claim for the violation of Mr. Williams' constitutional rights, plaintiff's claim for municipal liability against Delta County must fail.  Accordingly, amending the complaint to properly name Delta County would be futile.  *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) ("Refusing leave to amend is generally only justified upon a showing of . . . futility of amendment.").

Given that the Court is dismissing plaintiff's federal claims, it declines to exercise supplemental jurisdiction over the remaining state law claim.  *See* 28 U.S.C. § 1367(c)(3); *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) ("pendent jurisdiction over state claims is exercised on a discretionary basis and . . . if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (internal citations and alterations omitted).

Wherefore, it is

**ORDERED** that Defendants' Motion to Dismiss [Docket No. 20] filed by defendants Fred D. McKee, Debbie Griffith, and Delta County, Colorado is GRANTED. Plaintiff's claims under the First and Fourteenth Amendments are dismissed with prejudice.  Plaintiff's state law claim for retaliatory termination is dismissed without prejudice.  It is further

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 38] is REJECTED.  It is further

**ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint [Docket No. 31] filed by plaintiff Robin L. Williams, as personal representative of the estate of Michael R. Williams, is DENIED.  It is further

**ORDERED** that this case is CLOSED.

DATED September 15, 2014.

BY THE COURT:


  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge